# WAGG v. HERBERT.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 29.   Argued November 11, 1909.—Decided January 24, 1910.

In a suit in equity to have a deed declared a mortgage and in which fraud, oppression and undue influence are charged, the court is not concluded by what appears on the face of the papers but may inquire into the real facts of the transactions. *Russell* v. *Southard,* 12 How. 139.

A court of equity may decree that a deed given in settlement of a mortgage debt, no new consideration moving, was, by reason of fraud, oppression and undue influence, merely a new mortgage, and by such decree no new contract is created by the court, and the relation of mortgagor and mortgagee originally existing is not disturbed.

Though laches may be the equitable equivalent of the legal statute of limitations, there is no fixed time that makes it a bar, and in this case a delay of a little over two years in bringing an action to have a deed declared to be an equitable mortgage did not amount to laches.

19 Oklahoma, 525, affirmed.

THIS was a suit commenced on June 13, 1903, in the District Court of Pawnee County, Oklahoma, by William H. Herbert and Mary B. Herbert, his wife, against a number of defendants, the principal one being Solomon R. Wagg, the appellant. The suit was one to have a certain conveyance, in form conveying the legal title to a tract of land from Mrs. Herbert to Wagg, adjudged void, as having been fraudulently obtained, and, to redeem the property from a prior mortgage lien. An outline of the transaction between the Herberts and Wagg is as follows: On October 26, 1898, they borrowed from him one thousand dollars and gave their promissory note payable in one year, with interest after maturity at ten per cent per annum, and as security therefor a mortgage on eighty acres belonging to her, and adjoining the town of Cleveland, in the county of Pawnee.

Wagg retained one hundred dollars as interest for the first year, and sent the mortgagors nine hundred dollars. At the same time, as required by him, the plaintiffs executed to him a warranty deed for the same real estate, which was left in the bank of Cleveland in escrow as security for the note and mortgage. In closing this transaction he wrote to one of the plaintiffs a letter, in which he said: "This pays first year's interest, second year's interest is not due until the end of the second year and six months' grace on end of this makes a full two and a half years before you allow, or I can ask for the deed in case of default of contract."

On December 26, 1899, he withdrew the deed in escrow from the bank and caused it to be filed and recorded in the office of the register of deeds of Pawnee County. His excuse for this was that not merely was one hundred dollars due as interest, but also that there was a default in the payment of taxes for the year 1898, and that to protect the property he had been obliged to pay them, amounting to $24.94, with accrued penalty and costs. Notwithstanding he had taken and recorded this deed, which apparently transferred to him the legal title, he advised Mrs. Herbert that she might still redeem the land according to the terms of the original loan. In May, 1901, the parties, who had been talking of a settlement for some time, executed two deeds, one from Mrs. Herbert, her husband having left for parts unknown, to the defendant of the entire eighty acres, and one from him to her of twenty-five acres. Thereafter this defendant platted the fifty-five acres as an addition to the town of Cleveland and sold and conveyed lots to the other parties named as defendants.

In the second amended petition, the one upon which the case was tried, plaintiffs alleged that the defendant Wagg was guilty of fraud and oppression, and taking advantage of his position and the relationship of the parties, obtained for a grossly inadequate consideration the title to the fifty-five acres; that after platting he conveyed some lots "to innocent purchasers, the exact lots and amounts received for which are

not known to the plaintiff, but which amount to a large sum of money;" that he had not accounted for the moneys 'so wrongfully received, and that an accounting was necessary.

The case was tried by the judge without a jury. Several hundred pages of testimony were taken, and on May 19, 1905, a decree was entered finding generally the issues in favor of the plaintiff, Mrs. Herbert, the death of whose husband had been suggested pending the suit, adjudging that the deed of May, 1901, from her to the defendant was a mortgage, that an accounting be had and that she be allowed to redeem. The case was reserved for further consideration and determination of the claims of and an accounting with the other defendants. This decree was, on October 12, 1907, affirmed by the Supreme Court of the Territory, *Wagg* v. *Herbert*, 19 Oklahoma, 525, all the defendants joining in the appeal to that court. Thereafter the case was brought here on appeal by the defendant Wagg, the other defendants not joining in the appeal, but named as parties appellees.

*Mr. Arthur J. Biddison* for appellant:

A general averment of fraud in a bill in equity is limited by the facts set forth to show the fraud. *United States* v. *Des Moines &c. Ry.*, 142 U. S. 544; *Wiseman* v. *Eastman*, 21 Washington, 163. A general averment without stating specific facts presents no issue and no proof is admissible. *Kingman Ry. Co.* v. *Quinn*, 45 Kansas, 477; *Woods* v. *Carpenter*, 101 U. S. 135; *Southall* v. *Farish*, 1 L. R. A. 641; *Bardwick* v. *Dillon*, 7 Oklahoma, 535; *Lee* v. *Mehew*, 8 Oklahoma, 136; *Jackson* v. *Rowell*, 4 L. R. A. 637.

The legal title passed under the conveyances and there was no fraud. *Bradbury* v. *Davenport*, 52 Pac. Rep. 301; *Vance* v. *Anderson*, 45 Pac. Rep. 816; *Seawell* v. *Hendricks*, 46 Pac. Rep. 557; *McDonald* v. *Huff*, 19 Pac. Rep. 499; *Russell* v. *Southard*, 12 How, 139, distinguished.

It is neither fraud, oppression nor undue influence for a creditor to make claims in excess of his legal rights. *Nell* v.

*Carson,* 2 S. W. Rep. 107; *Schramm* v. *Haupt,* 37 N. W. Rep. 798; *Perkins* v. *Frinka,* 15 N. W. Rep. 115; *Thompson* v. *Phœnix Ins. Co.,* 46 Am. Rep. 357; *Insurance Co.* v. *Warten,* 59 Am. St. Rep. 129; *Fish* v. *Clelland,* 33 Illinois, 238; *Severance* v. *Ash,* 17 Atl. Rep. 69; 14 Am. & Eng. Ency. of Law, 2d ed., 54; *Morton* v. *Morris,* 72 Fed. Rep. 392; *Stewart* v. *Miller,* 7 S. W. Rep. 603; *Walker's Adm.* v. *Farmers' Bank,* 14 Atl. Rep. 823.

Nor is it fraud or oppression to threaten a civil suit. *Dispeau* v. *Bank,* 53 Atl. Rep. 868; *Hilburn* v. *Buckman,* 7 Atl. Rep. 272; 10 Am. & Eng. Ency. L., 2d ed., 344.

In order to constitute undue influence the grantor must be deprived of free agency. *Conley* v. *Nailor,* 118 U. S. 127. Misrepresentations of law only will not vitiate a contract, even if the other party is ignorant of his rights. *Allen* v. *Galloway,* 30 Fed. Rep. 467; *Abbot* v. *Treat,* 3 Atl. Rep. 47; *Kingsberry* v. *Sargent,* 22 Atl. Rep. 126; *Jones* v. *Foster,* 51 N. E. Rep. 862; *Foster* v. *Railway Co.,* 146 U. S. 88; *Insurance Co.* v. *Warten,* 59 Am. St. Rep. 129; *Wetzel* v. *Transfer Co.,* 65 Fed. Rep. 23; *S. C.,* 167 U. S. 237. The transaction was a purchase of part of the property and not an acquisition of the equity of redemption.

The plaintiff was guilty of laches, barred by the two-year statute of limitations, and changed conditions make the avoidance inequitable. *Moore* v. *Moore,* 56 California, 89; *McMillan* v. *Cheeney,* 30 Minnesota, 519. Knowledge of facts and not of law is all that is necessary to set statute in motion. *Commissioners* v. *Renshaw,* 99 Pac. Rep. 638; *Black* v. *Black,* 68 Pac. Rep. 662; *Piekenbrock* v. *Knower,* 114 N. W. Rep. 200; *Donaldson* v. *Jacobitz,* 72 Pac. Rep. 846; *Redd* v. *Brun,* 157 Fed. Rep. 190. For cases similar to this in which laches was held a bar see *Alsop* v. *Riker,* 155 U. S. 448; *Leavenworth* v. *Douglass,* 53 Pac. Rep. 123; *Thornton* v. *Natchez,* 129 Fed. Rep. 84; *Johnson* v. *Atlantic Co.,* 156 U. S. 648; *Life Ins. Co.* v. *Austin,* 166 U. S. 699; *State* v. *LaCrosse,* 77 N. W. Rep. 167; *Grass* v. *Portland Co.,* 54 Pac. Rep. 845; *Robers* v. *Van Ant-*

*wick*, 58 N. W. Rep. 757; *Schlawig* v. *Purslow*, 8 C. C. A. 315; *Wheeler* v. *McNeil*, 101 Fed. Rep. 685.

Silence, delay, acquiescence or use or retention of fruits of contract amounts to ratification. *Scheftel* v. *Hays*, 58 Fed. Rep. 457; *Kinne* v. *Webb*, 54 Fed. Rep. 54; *Parson* v. *McKinley*, 57 N. W. Rep. 1134; *Paine* v. *Harrison*, 37 N. W. Rep. 588; *Grymes* v. *Sanders*, 93 U. S. 55; *Shelby* v. *Creighton*, 91 N. W. Rep. 369; *Hoyt* v. *Latham*, 143 U. S. 553; *Oil Co.* v. *Marbury*, 91 U. S. 537; *Litchfield* v. *Brown*, 17 C. C. A. 28. A delay of three years or less was held fatal in *Blackman* v. *Wright*, 65 N. W. Rep. 843; *Straight* v. *Junk*, 59 Fed. Rep. 321; *Sagadohoc Land Co.* v. *Ewing*, 65 Fed. Rep. 702; *Curtis* v. *Lakin*, 94 Fed. Rep. 251; *Day* v. *Ft. Scott Co.*, 38 N. E. Rep. 567; *Perry* v. *Pierson*, 25 N. E. Rep. 636; *Land Co.* v. *Neill*, 6 So. Rep. 1; *Hatch* v. *Ferguson*, 57 Fed. Rep. 959; aff'd 14 C. C. A. 41; *Curley* v. *Rue*, 35 N. E. Rep. 824; *Arnold* v. *Hagerman*, 17 Atl. Rep. 93; *Fraker* v. *Hauck*, 36 Fed. Rep. 403; *Goodell* v. *Deivey*, 100 Illinois, 308; *Bedford* v. *Moore*, 54 Missouri, 448; *Learned* v. *Foster*, 117 Massachusetts, 365; *Schadski* v. *Abright*, 5 S. W. Rep. 807; *Kline* v. *Vogel*, 1 S. W. Rep. 733; *Schlaing* v. *Flechenstein*, 45 N. W. Rep. 770; *Hamilton* v. *Lubukee*, 99 Am. Dec. 562; *Parkhurst* v. *Van Courtland*, 7 Am. Dec. 427; *Ward* v. *Sherman*, 192 U. S. 168; § 761, Wilson's Ann. Stat. 1903.

*Mr. E. M. Clark* and *Mr. Watson E. Coleman* for appellee submitted.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The petition charged that the defendant Wagg was guilty of fraudulent, wrongful, oppressive and unjust conduct, and that through such conduct he obtained the deed of May 28, 1901. The trial court, as stated, found generally in plaintiff's favor. The Supreme Court, in an elaborate opinion, in which it

narrated fully the details of the transactions between these parties and the testimony given on the hearing, closed its recital in these words:

"It must therefore follow, as an irresistible conclusion, that the allegations in the petition, of fraud, oppression, undue influence, and inadequate consideration were fully sustained by the evidence, and we are unable to perceive how the trial court could have reached any other fair, just, and rational conclusion upon the entire evidence as disclosed by this record."

The testimony as to the value of the property at the time of the settlement in May, 1901, was conflicting, some placing it at $100 per acre. In reference to this conflict the court said:

"It is a settled rule of this court, and one which we have reiterated and reiterated time and again, that where the evidence reasonably sustains the finding and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court."

Evidently the Supreme Court believed that the defendant had acquired in settlement of a debt a tract of land of far greater value than the amount of the debt, and that this was accomplished by fraud, oppression and undue influence. Upon these facts a decree setting aside the conveyance was undoubtedly right.

Counsel for defendant, on his appeal to this court, has filed a brief of over 150 pages, in which he narrates the facts as they appear to him, and cites many authorities as to the circumstances which will uphold a conveyance upon such or similar facts. Of course, upon the face of the papers the deeds of May, 1901, vested in the defendant the title to the fifty-five acres, but it is well established that in a suit in equity between parties, in which fraud, oppression and undue influence are charged, the court is not concluded by that which appears on the face of the papers, but may institute an inquiry into the real facts of the transactions. So thoroughly is this doctrine established that any discussion of the cases in this and other courts affirming it would be useless. They rest upon elementary

principles of equity. It is sufficient to refer to *Russell* v. *South-ard*, 12 How. 139, and the many authorities cited in the opinion.

Counsel further contends that the decree is erroneous, in that it adjudges that the deed of May, 1901, to defendant was a mortgage, and as such only a lien upon the property; that there is no evidence that this deed was not intended as a conveyance or that it was intended as a mortgage, and that courts do not make contracts for parties. But this contention presents a mere technical matter. The petition alleges, in addition to the averment that the deed was obtained wrongfully and fraudulently, "that the only consideration received by said plaintiff for the said purported deed, marked 'Exhibit E' (the deed to defendant of May, 1901, of the entire tract) was a relinquishment of the said mortgage herein referred to as 'Exhibit B' (the original mortgage given by Mr. and Mrs. Herbert to defendant)." In other words, whatever technical criticism may be made upon the form of the decree, it was in substance a finding and decree that the deed of May, 1901, was void, as having been obtained by the fraudulent conduct of the defendant, and that being set aside, left the property subject to the lien of the original mortgage given October 24, 1898. Of course, the act of Wagg in taking from the bank the deed placed in escrow and having it recorded may, in view of his assurances to Mrs. Herbert, be regarded as immaterial. Equitably, the relation of mortgagor and mortgagee was not disturbed. The court did not make a new contract for the parties, but, leaving the mortgage valid and binding, decreed the invalidity of a subsequent conveyance, and also ordered an accounting by the defendant as a mortgagee in possession.

There is in this case no lapse of time, no matter of estoppel, which, so far as the defendant Wagg is concerned, forbids a court of equity from investigating and determining the real facts. Mrs. Herbert's deed to defendant was executed May 28, 1901, and this suit was commenced June 13, 1903, less than two years and a month from the date of the wrong complained

of. While laches is often spoken of as the equitable equivalent of the legal statute of limitations, yet there is no fixed time which makes it an absolute bar. In *Russell* v. *Southard, supra,* there was between the fraudulent transaction and the commencement of the suit a lapse of nineteen years and eight months, and it was held that that was not sufficient, the court saying (p. 155):

"The absence of all valuable consideration for the surrender of the equity, and the circumstances of distress under which it was made, and which, so far as appears, continued to exist down to the filing of the bill, coupled with the conviction, which we think Russell mistakenly entertained, that his rights were probably destroyed, must prevent us from allowing the lapse of time to be a positive bar."

The rights of purchasers from Wagg subsequent to May 28, 1901, are protected by the accounting ordered, and as they did not appeal from the decree it must be assumed that they were satisfied with it.

The decree of the Supreme Court of the Territory of Oklahoma is

*Affirmed.*